UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLICK GO AND BUY INC.,<br><br>                Plaintiff,<br><br>v.<br><br>IT ASSETS, INC.,<br><br>                Defendant. | Civil Action No. No. 24-0744 (JXN) (JBC)<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before the Court upon Defendant IT Assets, Inc.'s ("Defendant") motion to dismiss (ECF No. 18) Plaintiff Click Go and Buy Inc.'s ("Plaintiff") Complaint (ECF No. 1) ("Complaint") for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1391(b) and (c) respectively. The Court has considered the parties submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion to dismiss Plaintiff's Complaint is **DENIED**.

    **I.**    **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff's claims arise from a contract between the parties for the sale of used keyboard covers for Microsoft Surface Pro tablet computers. (Compl. ¶¶ 10, 11). Plaintiff, a New Jersey e-commerce consumer products retailer, alleges fraud, fraud in the inducement, breach of contract and, in the alternative, negligent misrepresentation against Defendant. (Compl. ¶¶ 6, 7).

On or about November 9, 2022, Plaintiff's President, Marco Palacci ("Palacci"), contacted Keven Bataille ("Bataille"), an "Account Executive" employed by Defendant, by email, in

1

response to a LinkedIn Group message posted by Bataille, in which Defendant, an Oklahoma based corporation, offered for wholesale purchase, quantities of used Microsoft Surface Pro keyboard covers. (Compl. ¶¶ 10, 11; Declaration of Marco Palacci ("Palacci Decl.") ¶¶ 8-9, ECF No. 21-1; Palacci Decl., Ex. A, ECF No. 21-2; Certification of Michael Smith ("Smith Cert.") ¶¶ 12, 14, ECF No. 18-3)).

During the initial telephone call between the parties, Palacci informed Bataille that Plaintiff was located in New Jersey and explained Plaintiff's requirements regarding the appearance and functionality of the keyboards Plaintiff was interested in purchasing. (Palacci Decl., ¶ 9). Bataille represented during the call that Defendant had a large quantity of keyboards that met CGBI's requirements. (*Id.*).

The parties engaged in subsequent telephonic and email communications regarding the quality of the keyboard covers. (Compl. ¶¶ 14-20; Palacci Decl., ¶¶ 10-13, Exs. B, D, ECF Nos. 21-3-5). Bataille also sent Plaintiff an invoice[1] for the keyboard covers delineating the quantities and condition of each grade and further represented that "[a]ll units are tested, graded, working and complete." (Palacci Decl. ¶ 11, Ex. C, ECF No. 21-4). The invoice identified roughly half of the products as being Grade A (in working, saleable condition with no need for reconditioning). (*Id.*). Based on Bataille's representations regarding the condition of the keyboards, Plaintiff submitted payment to Defendant. (Compl. ¶ 23). During negotiations, the parties agreed that Plaintiff would have the opportunity to inspect the keyboard covers and return any that Plaintiff could not sell to its consumer market. (Compl. ¶¶ 20-22).

Plaintiff arranged for a shipping company to pick up the keyboard covers at Defendant's location in Oklahoma City, Oklahoma. (Smith Cert., ¶ 15). Plaintiff alleges that the keyboard

---

[1] The total invoice amount was $110,136.64. (Compl. ¶ 17; Palacci Decl., Ex. C).

covers were not in the condition represented by Defendant and that "[r]ather than roughly half of the units being Grade A. . . the vast majority of the units were in poor physical condition and were not functional." (Compl. ¶¶ 24-25). Subsequently, the parties engaged in telephonic and email communications regarding the quality of keyboard covers and Plaintiff's return of the alleged nonconforming keyboard covers. (Palacci Decl., ¶¶ 14-15). Defendant initially refused to accept the returned keyboard covers. (*Id.*). However, in a subsequent email, dated January 31, 2023, Defendant indicated they would accept a return. (Compl. ¶¶ 28-29; Palacci Decl., ¶ 15, Ex. E, ECF No. 21-6). Thereafter, Plaintiff shipped the keyboard covers back to Defendant. (*Id.* at ¶ 29). On April 17, 2023, Defendant issued a credit memo for the keyboard covers. (Palacci Decl., ¶ 16, Ex., ECF No. 21-7). Plaintiff alleges that $85,862 worth of the Surface Pro keyboard covers Defendant sent to Plaintiff did not conform, however, Defendant's credit was only for $53,058.70. (Compl. ¶ 30). To date, Defendant has not refunded any amount to Plaintiff. (Compl. ¶ 31; Palacci Decl., ¶ 17).

On February 8, 2024, Plaintiff filed their Complaint. (ECF No. 1). On April 12, 2024, Defendant filed a motion to dismiss Plaintiff's Complaint for lack of personal jurisdiction. (ECF No. 18) ("Def.'s Br."). On May 6, 2024, Plaintiff opposed. (ECF No. 21) ("Pl.'s Br."). On May 13, 2024, Defendant replied. (ECF No. 22) ("Def.'s Rep. Br."). This matter is ripe for consideration.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). "However, when the court does not hold

3

an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have all allegations taken as true and factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

Despite having all reasonable inferences drawn in its favor, the plaintiff cannot rely on the bare pleadings alone to defeat a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)). "A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, *i.e.* whether *in personam* jurisdiction actually lies." *Patterson*, 893 F.2d at 603 (citing *Time Share Vacation Club*, 735 F.2d at 67 n.9). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . ." *Patterson*, 893 F.2d at 603-04.

### III.  DISCUSSION

#### A. Personal Jurisdiction

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state[]" so long as the jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotation marks omitted). "[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258–59 (3d Cir. 1998). First, the court must apply the long-arm statute of the state in which it sits to determine whether exercising personal jurisdiction over the defendant is permitted. *Id.* Second, the court must evaluate whether exercising personal jurisdiction under the given circumstances would be consistent with the requirements of the Due

Process Clause of the United States Constitution. *Id.* For a federal court sitting in New Jersey, "this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *Id.*; *see also Miller Yacht Sales,* 384 F.3d at 96 (citing N.J. Ct. R. 4:4-4(c)); *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 316 (3d Cir. 2007).

Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "'certain minimum contacts with [New Jersey] such that the maintenance of the suit does not 'offend traditional notions of fair play and substantial justice.'" *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *International Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe*, 326 U.S. at 320).

"[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp.*, 471 U.S. at 474 (citing *International Shoe*, 326 U.S. at 316). A defendant must have "'fair warning'" that its conduct will subject it to the jurisdiction of a foreign court. *Burger King Corp.*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)). A defendant's conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Once a plaintiff demonstrates a *prima facie* case of personal jurisdiction by establishing minimum contacts, the burden shifts to the defendant. In fact, once minimum contacts have been shown, jurisdiction is "presumptively constitutional." *O'Connor*, 496 F.3d at 324. A defendant

5

"must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477.

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction over a defendant.[2] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If a defendant is subject to a forum's general jurisdiction, he or she can be sued there on any matter. *Id*. If, however, a defendant is solely subject to specific jurisdiction, he or she may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id*.

**(1) General Jurisdiction**

"General (or 'all-purpose') jurisdiction permits a court to hear any and all claims against a defendant brought within a certain forum, even if those claims have nothing to do with any actions the defendant took in the forum." *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022) (citing *Goodyear*, 564 U.S. at 923). The sweeping "breadth" of such jurisdiction imposes one "correlative limit." *Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.*, 592 U.S. 351, 358 (1945). The question is whether the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 564 U.S. at 919); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984); *International Shoe*, 326 U.S. at 317. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all purpose jurisdiction there." *Daimler*, 571 U.S. at 137. "For an individual, the paradigm forum for

---

[2] Personal jurisdiction can also be obtained through consent, waiver, or in-state service on an individual defendant. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-97 (1991) (regarding consent via a forum selection clause); *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 628 (1990) (regarding in-state service); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 921 F.3d 98, 104-05 (3d Cir. 2019) (regarding waiver); *Jasper v. Bexar Cnty. Adult Det. Ctr.*, 332 F. App'x. 718, 719 (3d Cir. 1999) (regarding consent). Defendant "did not[] and does not[] consent to jurisdiction." (Smith Cert., ¶ 4).

the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear*, 564 U.S. at 924 (citation omitted). With respect to a corporation, the paradigmatic forum is the place of incorporation and principal place of business.[3] *Daimler*, 571 U.S. at 137 (citation omitted).

As a threshold matter, it is clear the Court lacks general jurisdiction over Defendant. Plaintiff does not contest this point. (*See generally* Pl.'s Br.; Def.'s Rep. Br. at 1). Defendant is an entity that is incorporated and has its principal place of business in Oklahoma. (Smith Cert. ¶ 2). Defendant does not have an office in New Jersey, employs no individuals or independent contractors in New Jersey, does not own or lease property in New Jersey, has no company owned or operated vehicles making deliveries, pickups, or otherwise operating in New Jersey, and has no bank accounts or other assets located in New Jersey. (Certif. of M. Smith, ¶¶ 3-9). Defendant's contacts with New Jersey are not "so continuous and systematic" as to render Defendant essentially at home in the State, thus, the Court finds Defendant is not subject to general personal jurisdiction, *Daimler*, 571 U.S. at 127, and will confine the inquiry to whether it exercises specific jurisdiction over Defendant.

**(2) Specific Jurisdiction**

"Specific" or "case-linked" jurisdiction depends on an affiliation between the forum state and the defendant's "suit-related conduct." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Marten*, 499 F.3d at 296 (citing *Helicopteros*, 466 U.S. at 414-15, n.9). "A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of

---

[3] The defendant's "contacts need not relate to the subject matter of the litigation[,]" *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 633 (D.N.J. 2004), but must rise to "'a very high threshold of business activity.'" *Id.* (quoting *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 890 n.2 (3d Cir. 1981) (Gibbons, J., dissenting)). The facts required to establish sufficient contacts for general jurisdiction must be "'extensive and persuasive.'" *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982) (quoting *Compagnie*, 651 F.2d at 890 (Gibbons, J., dissenting)). In other words, the plaintiff must demonstrate "significantly more than mere minimum contacts to demonstrate general jurisdiction." *Provident Nat'l Bank*, 819 F.2d at 437.

personal jurisdiction over a defendant." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Burger King*, 471 U.S. at 475 n.18). But "[t]he contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford*, 592 U.S. at 359 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Actual "[p]hysical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *IMO Indus., Inc.*, 155 F.3d at 259.

The Third Circuit has laid out a three-part test to determine whether specific jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317. First, the defendant must have "purposefully directed [its] activities at the forum." *Id.* (internal quotation marks omitted). This factor has also been characterized as "purposeful availment," and focuses on contact that the defendant itself created within the forum state. *Burger King*, 471 U.S. at 475. The "purposefully directed" or "purposeful availment" requirement is designed to prevent a person from being haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third person[.]" *Id.* (internal quotation marks omitted) (citing *Keeton*, 465 U.S. at 774; *World-Wide Volkswagen Corp.*, 444 U.S. at 299; *Helicopteros*, 466 U.S. at 417). "Second, the plaintiff's claims 'must also arise out of or relate to' the defendant's activities." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129-30 (3d Cir. 2020) (quoting *O'Connor*, 496 F.3d at 317); *see also Helicopteros*, 466 U.S. at 414. "[T]hird, exercising personal jurisdiction must not 'offend traditional notions of fair play and substantial justice.'" *Danziger*, 948 F.3d at 130 (quoting *O'Connor*, 496 F.3d at 317); *see also International Shoe*, 326 U.S. at 316.

As an alternative means of establishing specific jurisdiction, when an intentional tort is alleged, a slight variation from the *O'Connor* three-part test, known as the *Calder* effects test, *O'Connor*, 496 F.3d at 317 n. 2, stemming from the Supreme Court's decision in *Calder v. Jones*,

8

465 U.S. 783 (1984) applies. The *Calder* effects test "can demonstrate a court's jurisdiction over a defendant even when the defendant's contacts with the forum alone [] are far too small to comport with the requirements of due process under our traditional analysis." *Marten*, 499 F.3d at 297 (internal quotation marks omitted); *see also IMO Indus.*, 155 F.3d at 265. Under *Calder*, "an intentional tort directed at the plaintiff and having sufficient impact upon [the plaintiff] in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus., Inc.*, 155 F.3d at 260. In *IMO Industries*, The Third Circuit held that the *Calder* effects test requires a plaintiff to show that:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

155 F.3d at 265–66 (footnote omitted); *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024) (citing *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001)). The *Calder* effects test, as interpreted by the Third Circuit, requires that a defendant's "'conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.'" *Marten*, 499 F.3d at 297 (quoting *World–Wide Volkswagen Corp.*, 444 U.S. at 297).

Here, Defendant argues that Plaintiff cannot meet any of these elements under either test, (Def.'s Br. at 7-11). Plaintiff opposes and contends the Court has specific jurisdiction over defendant under both the traditional purposeful availment test and *Calder* effects test. (Pl.'s Br. at 9-17).[4]

---

[4] To assert specific personal jurisdiction, Plaintiff must allege "claim-specific jurisdiction over defendants," meaning "an affiliatio[n] between the forum and the underlying controversy." *Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 499 (D.N.J. 2017) (alteration in original) (quoting *Walden*, 571 U.S. at 283 n.6). Because a specific

The Third Circuit Court of Appeals recently clarified that, while *Calder*'s "effects" test is often applied "in assessing personal jurisdiction over intentional tortfeasors, . . . *Calder* [did not] carve out a special intentional torts exception to the traditional specific jurisdiction analysis." *Hasson*, 114 F.4th at 189 (citation omitted) (alteration in original).[5] Accordingly, the Court will consider whether it has specific jurisdiction over Defendant under both the traditional test and the *Calder* "effects" test. *See id.* at 197 ("Though we agree with its application of *Calder*, the District Court also should have considered whether specific personal jurisdiction was proper under the traditional test as applied in *Ford Motor*.").[6]

### i. Specific Jurisdiction Under the Traditional Test

First, the Court assesses whether Defendant purposefully directed its activities at the forum, New Jersey. Plaintiff argues this first factor is satisfied because Plaintiff "alleges that [Defendant]

---

personal jurisdiction analysis is claim-specific, the Court typically analyzes the contract, quasi-contract, and tort claims separately. *See Remick*, 238 F.3d at 255-60. Claim-specific analysis, however, is not required where the claims at issue factually overlap. *O'Connor*, 496 F.3d at 318 n.3; *see Remick*, 238 F.3d at 255 (providing that it is not always necessary to conduct claim-specific analysis in every case involving multiple claims, however, the district court should have done so where claims consisted of breach of contract, defamation, misappropriation, and intentional interference); *see also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 147-150 (3d Cir. 1992) (examining the issue of personal jurisdiction as to plaintiff's fraud claim separately from plaintiff's breach of fiduciary duty claim where the claims at issue did not factually overlap). Here, Plaintiff's contract, fraud, fraud in the inducement, and negligent misrepresentation claims arise from the same underlying factual circumstances, therefore, the Court will not employ a claim specific approach to discern whether it may properly exercise specific personal jurisdiction over Defendant. *See Chen v. Wang*, No. 22-4708, 2024 WL 4771305, at *6 (D.N.J. November 12, 2024) (analyzing contract, quasi-contract, and tort claims together because claims have the same underlying factual circumstances); *Grant Indus., Inc. v. Isaacman*, No. 21-13094, 2022 WL 2358422, at *30 n.12 (D.N.J. June 30, 2022) (analyzing, *inter alia*, breach of contract, misappropriation of confidential information and trade secrets, fraud, and conversion claims together because they arose from the "same sequence of events and factual allegations").

[5] The *Hasson* Court noted that "the 'effects' test has often been applied where the alleged tortfeasor has de minimis contacts with the forum, *see Marten*, 499 F.3d at 297, or where the tortious conduct occurs primarily 'outside the forum' but has an 'effect. . .within the forum,'" 114 F.4th at 189 (citing *IMO Indus., Inc.*, 155 F.3d at 261).

[6] The *Hasson* Court further noted that "while the 'effects' test and the traditional test 'are cut from the same cloth,' they have distinct requirements." 114 F.4th at 189 (citing *Marten*, 499 F.3d at 297). The Court further explained:

> [T]he effects test. . .require[s] that the tortious actions of the defendant have a forum-directed purpose[—a requirement that] is not applicable in the more traditional specific jurisdiction analysis. . . .Unlike th[e] express requirement in the effects test, the traditional specific jurisdiction analysis simply requires that the plaintiff's claims arise out of or relate to the defendant's forum contacts. We do not agree with the argument that this traditional requirement is the equivalent of *the more demanding relatedness requirement of the effects test*.

*Id.* (citing *Miller Yacht*, 384 F.3d at 99) (emphasis in the original) (cleaned up).

knowingly committed fraud and fraud in the inducement by directing fraudulent communications to [Plaintiff] in New Jersey in the form of emails, telephone conversations, and a fraudulent invoice" and that such fraudulent communications establish sufficient contacts. (Pl.'s Br. at 9-10, 13). Defendant argues to the contrary that these contacts do not meet the threshold minimum contacts for specific jurisdiction. (Def.'s Br. at 7).

Whether Defendant purposefully availed itself in New Jersey is a close question. Defendant's LinkedIn "Group" post cannot be said to have been purposefully directed at New Jersey. (Palacci Decl., Ex. A); *O'Connor*, 496 F.3d at 317 ("[W]hat is necessary is a deliberate targeting of the forum."). Additionally, Defendant does not target advertising to New Jersey. (Smith Cert., ¶ 13). Moreover, the initial communication came from Plaintiff not Defendant, when Plaintiff's President Palacci emailed Bataille, an Account Executive employed by Defendant, in response to the LinkedIn post regarding the keyboard covers. (Compl. ¶ 10; Smith Cert., ¶¶ 12, 16). Plaintiff certifies that in the first phone call, also initiated by Plaintiff, Plaintiff apprised Defendant that the company was located in New Jersey. (Palacci Decl., ¶ 9). Subsequently, the parties then engaged in three or four phone calls and exchanged emails regarding the quality of the keyboard covers. (Compl. ¶¶ 14-20; Palacci Decl., ¶¶ 10-13, Exs. B, D). While "[m]ail and telephone communications *sent by the defendant* into the forum may count toward the minimum contacts that support jurisdiction" *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir.1993) (emphasis added), Plaintiff fails to allege or assert that Defendant initiated any of the telephone calls. (*See generally* Compl.; Palacci Decl., ¶¶ 9, 12-13). Moreover, in the emails exchanged between Palacci and Bataille, Palacci's emails do not contain a signature line indicating a location, which fails to bolster the assertion Defendant was aware of Plaintiff's location. (Palacci Decl., Exs. B, D). *See Am. Bd. of Internal Med. v. Rushford*, No. 14-6428, 2015

11

WL 5164791, at *5 (D.N.J. Sept. 2, 2015) ("[W]here an asserted basis for personal jurisdiction is email communications, a threshold question that should be asked with respect to the issue of 'purposeful availment' is whether there is any indication in the substance of the emails, the email address itself, or other facts incident to the communications that the sender of the emails was aware that the recipient was located in or would be accessing the emails from the forum state." (quoting *Watiti v. Walden Univ.*, No. 07-4782, 2008 WL 2280932, at *11 (D.N.J. May 30, 2008))); *see also Machulsky v. Hall*, 210 F.Supp.2d 531, 542 (D.N.J. 2002) (minimal email correspondence, "by itself or even in conjunction with a single purchase, does not constitute sufficient minimum contacts."). Nor does it appear Defendant initiated any of the email communications. Rather Defendant's emails appear to be in reply to Plaintiff. (Palacci Decl., Exs. B, D). However, the invoice and subsequent credit memo sent to Plaintiff both contain New Jersey addresses. (Palacci Decl., Exs. C, F).

Although "[a] single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant" *Miller Yacht Sales*, 384 F.3d at 96 (citing *Burger King*, 471 U.S. at 475 n.18) "a plaintiff's unilateral activity does not establish the requisite minimum contacts necessary to exercise personal jurisdiction over a nonresident defendant." *WorldScape, Inc. v. Capital Management*, No. 10–4207, 2011 WL 3444218, at *5 (D.N.J. August 5, 2011) (citation omitted). Here, Plaintiff does not allege that Defendant at any time initiated contact with its company.

Plaintiff relies on *IDT Domestic Telecom, Inc. v. Crumpler*, No. 22-1947, 2023 WL 1360404 (D.N.J. Jan. 31, 2023) asserting it is analogous to the facts at bar. (Pl.'s Br. at 10). Defendant counters that *IDT* is distinguishable. (Def.'s Br. at 6-7). The Court agrees that *IDT* is more distinguishable than analogous. In *IDT*, Plaintiff IDT ("IDT"), a New Jersey-based company

that owned mobile-phone applications, sued defendant, the CEO of a California-based advertising agency, for fraud relating to mobile-phone application installations falsely attributed to defendant's advertising. *IDT*, 2023 WL 1360404, at *1-2. Defendant moved to dismiss for lack of personal jurisdiction. *Id.* at *2. IDT alleged that, "over a three-year period, [Defendant CEO] personally sent dozens of fraudulent invoices to IDT's accounts payable department in New Jersey. *Id.* The court held that these alleged facts established specific jurisdiction over defendant CEO under the traditional test. *Id.* at *4. The court reasoned that defendant "'purposefully' directed his activities at New Jersey by allegedly sending [dozens of] fraudulent invoices to IDT [] in Newark, New Jersey. *Id.* The court further reasoned defendant "knew or should have known this office was located in New Jersey, because at least some of the invoices included IDT's address in Newark, New Jersey." *Id.* Next, the court found that the lawsuit arises out of the allegedly fraudulent invoices (the defendant's contacts with New Jersey). *Id.* Finally, the exercise of jurisdiction "comports with fair play and substantial justice," because the defendant CEO "managed a relationship with a New Jersey business for several years." *Id.*

In IDT defendant had sent "dozens" of invoices with allegedly fraudulent information while here, Defendant allegedly sent one. Additionally, the court underscored defendant's years long relationship with IDT. In contrast here, there was no ongoing relationship between Plaintiff and Defendant, but merely one transaction. Although the court found defendant knew or should have known IDT's office was located in New Jersey because some of the invoices included a Newark, New Jersey address, which can also be said here, the IDT court's analysis was primarily centered around the dozens of invoices and years long relationship between the parties.[7] Personal

---

[7] Similarly, Plaintiff's reliance on *Miller v. McMann*, 89 F.Supp.2d 564, 567–68 (D.N.J. 2000) is misplaced. In *Miller*, the court exercised personal jurisdiction because plaintiff alleged defendants instructed real estate agents/defendants to travel to New Jersey to obtain plaintiff's signature on a quitclaim deed in order to defraud her. Unlike *Miller*, Defendant never traveled to New Jersey. *See WorldScape*, 2011 WL 3444218, at *6 (also distinguishing *Miller*).

13

jurisdiction determinations are fact specific. *Mellon Bank East PSFS*, 960 F.2d 1217, 1224–25 (3d Cir. 1992) ("Each case must be judged on its particular facts. . .citing cases where other courts found other defendants in similar circumstances to be subject to that court's jurisdiction may or may not be helpful. . .questions of personal jurisdiction do not lend themselves to categorical determinations.").

At this stage, because Plaintiff has not alleged Defendant initiated contact with Plaintiff nor created a substantial connection with New Jersey, specific jurisdiction, particularly the minimum contacts prong of the traditional test is lacking.

> ii. **The Court Does Not Have Specific Jurisdiction Over Defendant Under the *Calder* "Effects" Test**

The Third Circuit has cautioned that the effects test is to be applied narrowly: "At a minimum, [Plaintiff] must allege facts that establish that defendants 'expressly aimed' their conduct" at the forum state. *Marks v. Alfa Grp.*, 369 F. App'x 368, 370 (3d Cir. 2010). Courts need not consider the first two elements if the third element is not met. *Marten*, 499 F.3d at 297. To satisfy the expressly aimed prong, the plaintiff must do the following: (1) "show that the defendant *knew* that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum," and (2) "point to specific activity indicating that the defendant *expressly aimed* its tortious conduct at the forum." *IMO Industries, Inc.*, 155 F.3d at 266 (emphasis added).

Defendant's LinkedIn "Group" post cannot be said to have expressly targeted New Jersey. (Palacci Decl., Ex. A); *See Hasson*, 114 F.4th at 191 ("[T]he effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim [its] conduct at that state.") (quoting *Marten*, 499 F.3d at 297); *see also id.* (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 401 (4th Cir. 2003) (Defendant "did not. . .direct electronic activity into

14

[the forum] with the manifest intent of engaging in business or other interactions within that state *in particular*" by "set[ting] up its generally accessible, semi-interactive Internet website.") (emphasis in the original).

Plaintiff argues, "Defendant 'expressly aimed its tortious conduct' here by directing fraudulent communications into the state." (Pl.'s Br. at 16). Although Plaintiff asserts that Defendant knew Plaintiff was located in New Jersey after the initial phone call and the subsequent invoice and credit memo sent by Defendant identify two New Jersey addresses, (Palacci Decl., Exs. C, F), "ultimately learn[ing]" of the Plaintiffs' location after the fact does not, in this case, satisfy the "effects" test's "intentionality requirement," *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454-55 nn. 5, 6 (3d Cir. 2003). Indeed, "'*Calder* requires more,' a 'defendant accused of an intentional tort' is not 'subject to personal jurisdiction in the plaintiff's home state as soon as the defendant learns what that state is.'" *Hasson*, 114 F.4th at 192 (citation omitted); *see also Lawn Doctor, Inc. v. Branon*, No. 07–4735 2008 WL 2064477, at *6 (D.N.J. May 14, 2008) ("A plaintiff's mere assertion that the defendant knew that the plaintiff's principal place of business was located in the forum is insufficient to satisfy the third prong of the test.") (citation omitted).

Additionally, Plaintiff alleges that the parties engaged in three or four telephone calls and email communications regarding the quality of the keyboard covers. (Compl. ¶¶ 14-20; Palacci Decl., ¶¶ 10-13, Exs. B, D). As discussed in the traditional test analysis, however, it is unclear if Defendant initiated any of these phone calls. Moreover, it is notable that Plaintiff's emails lack any indicator of location in the email address itself or signature. (*See generally* Compl.; Palacci Decl., ¶¶ 9, 12-13; Palacci Decl., Exs. B, D); *WorldScape*, 2011 WL 3444218, at *6. Further, minimal email correspondence, "by itself or even in conjunction with a single purchase, does not constitute sufficient minimum contacts." *Machulsky*, 210 F.Supp.2d at 542.

15

The fact that Defendant provided Plaintiff, a New Jersey based company, with the keyboard covers is similarly unavailing. *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot"). "[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*." *IMO Indus., Inc.*, 155 F.3d at 263. Instead, the plaintiff must "point to other actions that adequately demonstrate[ ] that the defendants targeted (or 'expressly aimed' their conduct at) the forum, and thereby show that the forum was the focal point of the tortious activity." *Id.* "There is [also] a critical difference between an act which has an effect in the forum and one directed at the forum itself." *Surgical Laser Techs., Inc. v. C.R. Bard, Inc.*, 921 F. Supp. 281, 285 (E.D. Pa. 1996).

While "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact," *Walden*, 571 U.S. at 285, here, Defendant did not even ship the keyboard covers directly to Plaintiff. Instead, Plaintiff arranged for a shipping company to pick up the keyboard covers at Defendant's location in Oklahoma City, Oklahoma. (Smith Cert., ¶ 15). "Absent some conduct by Defendant directed at [New Jersey] rather than simply directed at Plaintiff, [New Jersey] is not a reasonably foreseeable forum." *Surgical Laser Techs.*, 921 F. Supp. at 285 n.6.

Although the brunt of Plaintiff's harm is no doubt felt in New Jersey, because Plaintiff fails to show that Defendant "manifest[ed] behavior intentionally targeted at and focused on the forum,"

at this juncture, Plaintiff fails to establish jurisdiction under the *Calder* effects test. *Marten*, 499 F.3d at 298.[8]

### ii.   Jurisdictional Discovery is Warranted

A court has discretion to allow discovery when considering a motion to dismiss for lack of personal jurisdiction. *See Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283 (3d Cir. 1994); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."). The rule of the Third Circuit Court of Appeals "is generally that jurisdictional discovery should be allowed unless the plaintiffs claim is clearly frivolous." *Mass. Sch. of L.*, 107 F.3d at 1042 (internal quotation marks omitted); *Compagnie*, 723 F.2d at 362 (If "the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden."). "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the defendant] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank*, 960 F.2d at 1223). Where this threshold has been met, courts "have sustained the right to conduct discovery before the district court dismisses for lack of personal jurisdiction." *Id.* (collecting cases). Jurisdictional discovery has been found particularly appropriate where the defendant is a corporation. *Compagnie*, 723 F.2d at 362.

---

[8] Since the Court concludes that Plaintiff failed to satisfy *Calder*'s "express aiming" prong, the Court need not substantively address whether Plaintiff adequately pled that he suffered the brunt of the alleged harm in New Jersey. *See Marten*, 499 F.3d at 297.

Here, the record before the Court contains sufficient non-frivolous allegations to support jurisdictional discovery. It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true and is to construe disputed facts in favor of the plaintiff. *Toys "R" Us*, 318 F.3d at 457. Plaintiff presents factual allegations that suggest with reasonable particularity the *possible* existence of the requisite contacts between the party and the forum state. Factual determinations such as who initiated the three or four phone calls, more information regarding the shipping of the keyboard covers, and a more precise indication of when Defendant knew or should have known Plaintiff was a New Jersey company are important facts that will inform whether specific jurisdiction over Defendant is proper. Plaintiff should have the opportunity to conduct jurisdictional discovery before the Court makes a final determination with respect to whether it may exercise jurisdiction over Defendant.

Accordingly, the Court will deny Defendant's motion to dismiss on jurisdictional grounds and permit limited jurisdictional discovery.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 18) is **DENIED** in favor of limited jurisdictional discovery. An appropriate Order accompanies this Opinion.

**DATED:** December 31st, 2024

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge